*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BURGE, Minors.

UNPUBLISHED
May 13, 2025
10:48 AM

No. 372477
Montcalm Circuit Court
Family Division
LC No. 2022-001068-NA

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights. On appeal, respondent argues that the trial court clearly erred in finding a statutory basis for termination and in determining that termination was in the children's best interests. She also contends that the trial court should have considered a juvenile guardianship instead of terminating her rights. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case began as an educational-neglect matter when the school reported that respondent's children, CKB and NGB, were absent dozens of times each school year. Following an investigation, the Department of Health and Human Services (DHHS) identified additional concerns about respondent's mental health and substance use. In December 2022, the DHHS filed a petition for child protective proceedings, alleging parental neglect and an unfit home environment. A month later, respondent admitted that her children had numerous unexcused school absences. The trial court authorized the DHHS petition and placed the children in the temporary custody of the court but initially allowed them to remain in respondent's home.

In February 2023, the DHHS filed a supplemental petition alleging that respondent had lost her job, had been evicted for failing to pay rent, and had failed to comply with her case service plan. The DHHS alleged that respondent had not adequately participated in substance-abuse counseling or treatment plans, failed to provide proof of Alcoholics Anonymous attendance, continued drinking in front of her children, and failed to document her children's medical school absences. At a March 2023 emergency removal hearing, which respondent did not attend, the trial court found immediate removal necessary. It pointed to to her lack of participation in services and

unknown whereabouts—respondent had told a DHHS worker that she was on her way to a substance-abuse treatment center in Sault Ste. Marie but was then found at her residence in Montcalm County. By that time, respondent had placed the children with their maternal grandmother, where they remained. The trial court ordered respondent to, among other things, "[f]ollow all recommendations provided by" the treatment center in Sault Ste. Marie.

In the immediate aftermath of the March 2023 proceedings, respondent continued not to comply with her plan. She admitted that she had not completed the treatment she intended to receive at the Sault Ste. Marie facility. After an April 2023 hearing, the trial court noted on the record that the DHHS had asked respondent to submit to a substance abuse test for alcohol and drugs, which respondent refused to participate in and then left the courthouse before the trial court could order her to comply. Treatment progress remained irregular thereafter, with respondent at times stagnating and deflecting responsibility, and at other times making appreciable progress.

By February 2024, respondent appeared to have made progress. She had been exercising unsupervised parenting time since November 2023 without incident, and the parties stipulated that she had complied with her service plan and that the children should be returned to her care. However, one week later, the DHHS moved to rescind the stipulation after discovering that respondent had again failed to send the children to school without explanation, tested positive for THC,[1] and admitted to using alcohol and Adderall while the children were in her care—none of which was known at the time of the stipulation.

At a June 2024 review hearing, despite respondent's outpatient treatment, both the lawyer-guardian ad litem and the DHHS recommended termination. The lawyer-guardian ad litem argued that respondent had failed to take any accountability for her actions or to benefit meaningfully from services. The DHHS similarly contended that respondent had not benefited from services but also emphasized that she was manipulative, dishonest, and unable to keep the children emotionally safe. The DHHS further submitted that the children needed permanency and stability, that respondent's mental health remained a concern, and that reunification was not appropriate. The trial court found that respondent had participated only marginally in her service plan and had shown limited, if any, benefit, and it ordered the DHHS to initiate termination proceedings.

Following a two-day termination hearing—during which the trial court heard from 14 witnesses, including respondent—the trial court found clear and convincing evidence supporting termination under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions that led to removal), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm) and concluded that termination was in the children's best interests. Respondent now appeals.

---

[1] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana. See *Stedman's Medical Dictionary* (26th ed), p 1791." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

## II. STATUTORY BASIS

Respondent first argues that the trial court erred in finding a statutory basis for termination. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's findings for clear error. *Id.*; see MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The trial court found three statutory grounds for termination. However, the petitioner needed to establish only one statutory ground to support termination. *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). When one ground is properly established, we need not address the others. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Here, termination was appropriate under MCL 712A.19b(3)(j), which provides that termination is warranted when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Behavior that places the child at risk is sufficient. *In re White*, 303 Mich App 701, 712-713; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id.* at 711. "The harm contemplated under MCL 712A.19b(3)(j) includes emotional harm as well as physical harm." *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021).

The trial court found that, given respondent's lack of accountability, failure to benefit from services, and poor judgment—including a "[s]elf-described binge" during an overnight visit in February 2024—there was a reasonable likelihood of harm if the children were returned to her care. The record supports these findings. In particular, respondent showed a persistent inability or unwillingness to comply with the service plans that were ordered by the trial court, and repeatedly violated the trust the court placed in her, such as an apparent lie about traveling to Sault Ste. Marie or renewing her substance abuse during unsupervised parenting time with her children. In light of *White*, the trial court did not clearly err by finding termination proper under MCL 712A.19b(3)(j). Because the trial court did not clearly err in finding a ground for termination under MCL 712A.19b(3)(j), we decline to address the additional statutory grounds. See *In re HRC*, 286 Mich App at 461.[2]

---

[2] That said, because the evidence of likely harm to the children is in large part respondent's failure to comply with the case service plan—which was intended to address the reasons that brought the family within the court's jurisdiction—there are significant parallels between the facts underlying this basis for termination and termination under MCL 712A.19b(3)(c)(*i*).

## III. RESPONDENT'S PROGRESS

Respondent next contends that the trial court erred by terminating her rights without adequately considering the progress she made after her relapse in February and March 2024. We disagree. This claim is unpreserved, so we review it for plain error affecting substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). Respondent must show that a plain error occurred and affected the outcome. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008).

At each review hearing, the trial court must evaluate progress toward alleviating or mitigating the conditions that led to foster care. MCR 3.975(F)(2). Although respondent points to her efforts after March 2024, the record demonstrates that the trial court considered those efforts but found them insufficient.

At the June 2024 hearing, the trial court found that respondent had only "marginally" participated in services and had shown limited, if any, benefit. She had not remained drug- and alcohol-free following her discharge from a residential treatment facility in July 2023, had not successfully engaged in therapy, had failed to complete psychoeducation, and had ceased working with her treatment team.

While respondent began outpatient therapy and completed an intensive outpatient program in May 2024, the trial court considered a progress report from her recovery coach indicating that respondent continued to deny responsibility for her substance use. The court also considered a lengthy report from the DHHS foster-care worker, which included a statement from respondent's therapist that, as recently as May 2024, she was "unable to face mental climbs or challenges despite what she has learned in treatment" and had missed or rescheduled seven out of 15 appointments.

Accordingly, the trial court did not plainly err by finding that respondent's post-March 2024 efforts were insufficient to avoid termination.

## IV. BEST INTERESTS

Respondent also contends that the trial court erred by finding that termination was in the children's best interests, particularly given their placement with a relative and the lack of court-ordered family therapy. We disagree.

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5. We review the trial court's best-interests determination for clear error. *In re Olive/Metts*, 297 Mich App at 40. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted).

In making its best-interest findings, the trial court acknowledged that the children were placed with their maternal grandmother and that termination was therefore not required under

MCR 3.976(E)(3)(a). In spite of the children's placement with a relative, however, the trial court found that termination was in the children's best interests:

> [Respondent] was completely aware of the services she had to participate in to have the children returned to her care and custody. She had months and months and months to participate in services. What did she do? She would begin a program for recovery and quit. . . . She made an independent choice not to do what she had to do to get her kids back. To me, that just shows a lack of love, affection for her kids. She puts herself above her kids. . . .
>
> So, I'm finding that even though the children were placed with the grandparent—the maternal grandparent—the mother's lack of engagement in services, her refusal to accept accountability or responsibility for the situation of her—of her children's removal from the home indicates to this Court's satisfaction that that will always be the case. That she'll put herself above her kids.
>
> So, I'm finding that even though the children were placed with a relative, this family dynamic can't be fixed, and the mother will always put her wants and needs ahead of her kids and blame everybody else for her problems.

Respondent's failure to participate meaningfully in services throughout the case supports the trial court's finding that termination was in the children's best interests. The children's grandmother testified that she was willing to care for them as long as necessary, further supporting the trial court's conclusion. *See In re Olive/Metts*, 297 Mich App at 41-42.

Respondent's argument that the DHHS failed to provide family therapy also lacks merit. Although the trial court initially ordered family therapy in November 2023, it later struck that requirement after acknowledging a miscommunication by the service provider that was not respondent's fault. The trial court made clear that it would not make any adverse findings against respondent based on the lack of family therapy. Moreover, "[w]hile the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Respondent failed to do so, and the lack of family therapy would not have changed the outcome.

Accordingly, the trial court did not clearly err in finding that termination was in the children's best interests.

## V. JUVENILE GUARDIANSHIP

Respondent contends that the trial court erred by failing to consider or order a juvenile guardianship at the permanency planning hearing. We disagree. Because this claim is unpreserved, we review it for plain error affecting substantial rights. *In re TK*, 306 Mich App at 703. To establish entitlement to relief, respondent must show that a plain error occurred and affected the outcome of the proceedings. *In re Utrera*, 281 Mich App at 8-9.

At a permanency planning hearing, the trial court must order the DHHS to initiate termination proceedings if a child has been in foster care for 15 of the most recent 22 months unless an exception applies. MCL 712A.19a(8). Exceptions include placement with a relative, a compelling reason that termination would not be in the child's best interests, or a failure by DHHS to make reasonable efforts. MCL 712A.19a(8)(a)-(c); see also MCR 3.976(E)(3)(a)-(c). After one of those exceptions has been demonstrated, the trial court can consider a guardianship:

> If the agency demonstrates under subsection (8) that initiating termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child under subsection (8), the court shall order 1 or more of the following alternative placement plans:
>
> * * *
>
> (c) Subject to subsection (11), if the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated. [MCL 712A.19a(9)(c). See also MCR 3.976(E)(4)(d).]

At the March 2024 permanency hearing, the trial court correctly found that termination was not yet mandatory under MCR 3.976(E)(3) because the children were placed with a relative and had not been in foster care for 15 months. However, the trial court did not find that pursuing termination would be contrary to the children's best interests. To the contrary, the trial court observed that "a strong argument could be made that [termination] is warranted" based on respondent's lack of progress and failure to comply with her service plan. The court was therefore not obliged to consider a guardianship as an alternative to termination at that time.

Moreover, the trial court did not order termination at the March 2024 hearing. Instead, it gave respondent additional time to comply with her service plan before ultimately concluding at later proceedings that termination was appropriate. Even if the trial court erred in failing to consider a guardianship sua sponte, respondent has not shown that consideration of a guardianship would have affected the outcome. See *In re Utrera*, 281 Mich App at 8-9.

## VI. CONCLUSION

The trial court did not clearly err by finding that termination was appropriate under MCL 712A.19b(3)(j) or by determining that termination was in the children's best interests. Nor did it plainly err by finding that respondent had not benefited from services or by failing to consider a juvenile guardianship sua sponte.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

-6-